# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| RACHEL TRACY, individually and in her capacity as next friend of D.T., an infant, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) No. 4:15-CV-1513 CAS ) |
| SSM CARDINAL GLENNON CHILDREN'S HOSPITAL, et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on motions to dismiss plaintiffs' Third Amended Complaint ("complaint") filed by defendants (1) SSM Cardinal Glennon Children's Hospital, Dr. Ayoob Ali, and Dr. Mohamad Al-Hosni (collectively the "Hospital defendants"); (2) Brian Kinkade, in his official capacity as Director of the Missouri Department of Social Services, Children's Division; and (3) Samuel Dotson, III, in his official capacity as Chief of Police of the Metropolitan Police Department of the City of St. Louis. Plaintiffs oppose the motions and they are fully briefed. For the following reasons, the Court will grant the motions to dismiss. Because all federal claims will be dismissed and there is no other basis for federal jurisdiction, the Court will decline to exercise supplemental jurisdiction over plaintiffs' remaining state law claim and will dismiss it without prejudice.

## I. Background

According to the complaint, this action "arises out of a false accusation of child abuse which caused needless separation of a baby from his mother, by refusing to discharge the baby, refusing to transfer the baby to a hospital closer to his home, removing the baby from the home without prior

notice and hearing and placing him in foster care.  This was done without reasonable cause to believe that child abuse had occurred."  Complaint ¶ 1 (Doc. 59).[1]

Plaintiffs' complaint asserts state law claims for false imprisonment against defendants SSM Cardinal Glennon Children's Hospital, Dr. Ali, Dr. Al-Hosni, and Amy Meyer in Count I; for medical malpractice against the Hospital, Dr. Ali and Dr. Al-Hosni in Count II; and federal claims under 42 U.S.C. §§ 1983 and 1988 for violations of plaintiffs' due process and equal protection rights under the U.S. Constitution and conspiracy to violate plaintiffs' constitutional rights, against the Hospital, Dr. Ali and Dr. Al-Hosni, Samuel Dotson, III, and Brian Kinkade in Count III. Plaintiffs seek both monetary damages and prospective injunctive relief.

## II.  Legal Standard

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint.  To survive a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Plaintiffs "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level."  Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008) (citing Twombly, 550 U.S. at 555 & n.3).  This obligation requires plaintiffs to plead

---

[1]Plaintiffs' complaint fails to comply with Rule 8(a)(2) of the Federal Rules of Civil Procedure because it does not contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Although the relevant facts of the case are fairly simple, the complaint devotes seventeen pages and 103 paragraphs to an unnecessarily detailed statement of the facts.  Plaintiffs' allegations in general are unnecessarily prolix, confusing and conclusory.

"more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," id. at 556, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. Id. at 555-56; Fed. R. Civ. P. 8(a)(2). The principle that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions, however. Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Although legal conclusions can provide the framework for a complaint, they must be supported by factual allegations. Id. To survive a motion to dismiss, "a civil rights complaint must contain facts which state a claim as a matter of law and must not be conclusory." Gregory v. Dillard's, Inc., 565 F.3d 464, 473 (8th Cir. 2009) (en banc) (quotation marks and citation omitted).

## III. Discussion

### A. Hospital Defendants' Motion to Dismiss

#### 1. Count II - Medical Malpractice

The Hospital defendants move to dismiss Count II, which asserts a state law claim for medical malpractice, on the basis that plaintiffs have failed to submit an affidavit based on the opinion of a legally qualified health-care provider certifying the merits of their case within 90 days of the filing of the complaint, as required by § 538.225, Mo. Rev. Stat. (2000). The Hospital defendants assert that dismissal without prejudice is required as a result of this failure, citing § 538.225 and Howard v. SSM St. Charles Clinic Medical Group, Inc., 364 S.W.3d 242, 244 (Mo. Ct. App. 2012) ("If a party filed a motion to dismiss for failure to file a health care affidavit, and a

statutorily adequate health care affidavit has not been timely filed, the trial court must dismiss the complaint without prejudice." (cited case omitted)).

Plaintiffs oppose the motion, arguing that the statute does not apply unless (1) the relationship of the parties is that of health care provider and recipient, and (2) the "true claim" relates only to the provision of health care services, citing <u>St. John's Regional Health Center, Inc. v. Windler</u>, 847 S.W.2d 168, 171 (Mo. Ct. App. 1993). Plaintiffs state without citation to any supporting authority that because they allege D.T. was ready for discharge on December 27, 2013 but was held in the hospital thereafter for other reasons, the relationship of the parties was not that of health care provider and patient, so the first part of the test is not met. Plaintiffs also assert that their medical malpractice claim does not relate only to provision of medical services, as they allege D.T. was ready for discharge but was restrained not to receive medically necessary care, but so he could be removed from his parents' home.[2] Finally, plaintiffs assert in the alternative that the Court has discretion to allow a medical malpractice action to proceed without the statutory affidavit upon a showing of good cause. Plaintiffs do not make any attempt to articulate facts relevant to a showing of good cause, however.

Section § 538.225, Mo. Rev. Stat., requires the timely submission of an affidavit based on the opinion of a legally qualified health-care provider certifying the merits of the plaintiff's case. "The language of section 538.225 unambiguously requires: (1) plaintiffs to file an affidavit in medical negligence cases; and (2) trial courts to dismiss without prejudice any such action if the

---

[2]In both the complaint and motion briefing, plaintiffs refer to D.T. being removed from plaintiff Rachel Tracy's home, but the facts as pleaded indicate D.T. was in the hospital rather than plaintiff Rachel Tracy's home when he was taken into temporary foster care.

affidavit is not filed." Lang v. Goldsworthy, 470 S.W.3d 748, 751 (Mo. 2015) (en banc) (cited case omitted).

The Windler case, cited by plaintiffs, demonstrates that plaintiffs' medical malpractice claim must be dismissed for failure to file the § 538.225 affidavit. In Windler, the hospital sued for the cost of medical and hospital care rendered. 847 S.W.3d at 170. Windler counterclaimed for false imprisonment, alleging that the hospital detained her against her will and kept her imprisoned in its psychiatric hospital through threats and force. Id. The hospital moved to dismiss Windler's counterclaim for failure to file the § 538.225 affidavit and the trial court granted the motion. On appeal, Windler argued the affidavit was not required because her intentional tort claim did not require that she show a duty and breach of the standard of care that a reasonably prudent and careful health care provider would have provided under similar circumstances, but rather she only needed to prove that the hospital intentionally restrained her against her will. Id. The Missouri Court of Appeals affirmed, stating it was implicit in the counterclaim that the hospital was acting in its capacity as a health care provider when the alleged unlawful imprisonment occurred, and concluding that despite the plaintiff's characterization of her claim as false imprisonment, her "true claim" required the affidavit "because the basis for the alleged false imprisonment was the incorrect—or totally absent—medical determination that she needed to be confined." Id. at 171.

In the present case, the complaint includes detailed allegations of the medical treatment services the Hospital defendants rendered to D.T., and expressly asserts a claim for medical malpractice in Count II. This count alleges that the Hospital defendants "failed to meet the applicable standard of care" by (1) hindering plaintiff Rachel Tracy from providing nurture, nourishment and physical care to D.T.; (2) refusing to send D.T. home with monitoring equipment and imposing a restriction on D.T.'s discharge that was beyond the applicable standard of care; and

(3) making false accusations against Rachel Tracy to child welfare authorities knowing that the conduct alleged did not constitute child abuse or neglect under any Illinois or Missouri statute or regulation.  Complaint ¶¶ 112, 113, 115.

Count II clearly alleges the existence of a relationship between the Hospital defendants and D.T. of healthcare providers and recipient.  Plaintiffs' argument that the healthcare provider-recipient relationship ended on the date they allege D.T. was ready to be discharged is both unsupported by any authority and unpersuasive.  Because Count II raises issues as to whether healthcare providers failed to meet the applicable standard of care, § 538.225 applies and a healthcare affidavit is required.

Plaintiffs attempt to distinguish <u>Windler</u> on the basis of a footnote that states:

> We need not decide whether, in the absence of a health care relationship, or if a health care relationship exists but other activities are involved, a claimant must file the affidavit.  To illustrate, if Windler had alleged that while visiting in the hospital she had been unlawfully restrained or detained by employees of St. John's upon an unfounded accusation of theft, the result might be different.  <u>Likewise, if Windler had alleged that as a patient in the hospital she was ready for discharge but was unlawfully restrained or detained because of unfounded theft accusations, the affidavit may or may not be required</u>.  Not having those facts before us, we do not reach such questions.

<u>Id.</u> at 171 n.7 (emphasis added).  Here, unlike the hypothetical situation the Missouri Court of Appeals declined to reach in <u>Windler</u> – allegations of theft delaying a patient's discharge – plaintiffs' allegations in their medical malpractice count that D.T. was restrained from leaving the hospital are closely intertwined with and related to his medical care, as they allege the Hospital defendants failed to exercise the appropriate standard of care by interfering with Rachel Tracy's ability to care for D.T., imposing conditions for D.T.'s release, and making false reports about child abuse or neglect to state authorities.

Plaintiffs argue they are not required to file the affidavit under <u>Pierce v. Pemiscot Memorial Health Systems</u>, 25 F.Supp.3d 1198 (E.D. Mo. 2014), which held that a § 538.225 affidavit is not required in a case alleging constitutional deprivations under § 1983. <u>Pierce</u> is distinguishable and does not support plaintiffs' position. In <u>Pierce</u>, the plaintiff was held in a psychiatric hospital under a court order for detention, evaluation and treatment not to exceed a period of 96 hours, unless a petition for a further period of detention and treatment was filed with the court. After 96 hours passed, the plaintiff was not discharged and no petition for further detention was filed, and she remained detained for a lengthy period of time against her will. <u>Id.</u> at 1201-03. Plaintiff sued, asserting claims under § 1983 for violation of her substantive and procedural due process rights, as well as state law claims.[3] <u>Id.</u> at 1204-05, 1210. The defendants moved for summary judgment on the basis that the plaintiff did not file a § 538.225 affidavit. This Court held the defendants were not entitled to summary judgment, because "it is well established that § 538.225 does not apply to a plaintiff's constitutional claim under § 1983." <u>Id.</u> at 1207 (citing cases). Unlike <u>Pierce</u>, however, plaintiffs' Count II is a state law medical malpractice claim, not a § 1983 claim, and therefore <u>Pierce</u> is not controlling.

Where a plaintiff asserted both state law medical malpractice claims and § 1983 civil rights claims based on the same allegations, the Eighth Circuit Court of Appeals approved the district court's dismissal of the medical malpractice claims for failure to file the § 538.225 affidavit, while it permitted the § 1983 claims to proceed. <u>See</u> <u>Moore v. Ernest-Jackson</u>, 16 F. App'x 517, 518 (8th Cir. 2001). This is the same situation as presented by plaintiffs' case.

---

[3]The plaintiff in <u>Pierce</u> did not assert a medical malpractice claim.

Plaintiffs argue that they do not have to file the § 538.225 affidavit because Count II does not relate only to the provision of medical services. This unsupported assertion does not convert plaintiffs' state law medical malpractice claim to an action under § 1983 or otherwise permit them to avoid the statutory requirement,[4] and this Court has previously rejected a similar argument. In Grace v. Harris, 2007 WL 3530200, at *1 (E.D. Mo. Nov. 13, 2007), the plaintiff asserted a § 1983 claim and a state law claim of professional negligence based on the defendant healthcare providers' failure to provide him with certain medications. The Court granted the defendants' motion to dismiss the professional negligence claim for failure to file a § 538.225 affidavit. The plaintiff argued his professional negligence claim was part of his § 1983 claim and therefore the statutory requirement did not apply, but the Court stated, "plaintiff's claims of negligence are based on the defendants' alleged breach of duty and thus [are] not sufficient to allege a constitutional violation of his rights." Id. at *2. As a result, the plaintiff was required to file a § 538.225 affidavit on his negligence claim. Id. The present case is like Grace, as the plaintiffs' medical malpractice claim is based on allegations that the Hospital defendants' actions did not meet the appropriate standard of care, and the claim does not suffice to allege a violation of the plaintiffs' constitutional rights.

Finally, plaintiffs assert that the Court has the discretion to allow a medical malpractice action to proceed without a § 538.225 affidavit upon a showing of good cause. Mo. Rev. Stat. 538.225.5 provides that the "affidavit shall be filed no later than ninety days after the filing of the petition unless the court, for good cause shown, orders that such time be extended for a period of time not to exceed an additional ninety days." Here, plaintiffs do not offer any reason why the period of time should be extended, much less make the required showing of good cause. More

_____

[4]As stated above and discussed more fully below, the complaint asserts § 1983 claims in Count III.

importantly, because this action was filed in October 2015, the affidavit was due in January 2016 and any extension under the statute could only have been granted until April 2016. This argument is therefore without merit.

For these reasons, the Hospital defendants' motion to dismiss Count II without prejudice will be granted.

### 2. *Count III - 42 U.S.C. §§ 1983 and 1988*

The Hospital defendants move to dismiss Count III, which asserts a claims under 42 U.S.C. §§ 1983 and 1988, asserting different arguments with respect to the hospital and physician defendants.

#### a. Defendant SSM Cardinal Glennon Children's Hospital ("Glennon")

Defendants state that a corporation acting under color of state law can only be held liable under § 1983 for its own unconstitutional policies, citing Crumpley-Patterson v. Trinity Lutheran Hospital, 388 F.3d 588, 590 (8th Cir. 2004), but plaintiffs' claims against Glennon are explicitly based on a respondeat superior theory, which the Eighth Circuit has repeatedly held is not a basis for holding a private corporation liable under § 1983. See Smith v. Insley's, 499 F.3d 875, 880 (8th Cir. 2007).

Plaintiffs respond that the complaint "sufficiently alleges a widespread pattern of unconstitutional conduct on the part of the Hospital. . . . . The Complaint alleges facts which infer a practice based on a policy on the part of the Hospital that is widespread as a state-imposed unconstitutional construction of Missouri law is alleged." Pls.' Response at 12 (Doc. 68). Plaintiffs assert that they are "informed that the Hospital has in place policies which implement the unconstitutional scheme described above" and claim to have "evidence of four affected families"

in Illinois and one in Missouri.  Id. at 13.  Plaintiffs attempt to characterize the complaint's assertion of respondeat superior liability against Glennon as "an additional alternative allegation."  Id.

The complaint specifically states that "[l]iability against the Hospital is alleged on the basis of *respondeat superior*," Complaint ¶ 139, and a careful review of the complaint shows that plaintiffs' claims against the Hospital are indeed based on that theory.  Contrary to plaintiffs' statements in their Response, the complaint does not include any language or factual allegations from which a reasonable inference could be drawn that Glennon had an unconstitutional policy or custom of making unwarranted or false reports to state authorities of child abuse or neglect by victims of domestic violence.  Plaintiffs' unsupported assertions in their Response cannot serve to remedy deficiencies in or amend the complaint's allegations.  Further, as a general rule, private hospitals do not act under color of state law for § 1983 purposes.  See, e.g., Blum v. Yaretsky, 457 U.S. 991, 1004 (1982) ("[t]he mere fact that a [nursing home] is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment.") (quoted case omitted).  "State law does not amount to an actionable hospital policy."  Mueller v. Auker, 700 F.3d 1180, 1191-92 (9th Cir. 2012) (hospital "did not become a state actor simply because it complied with state law requiring its personnel to report possible child neglect to Child Protective Services).  Because respondeat superior is not a basis for liability under § 1983, Polk County v. Dodson, 454 U.S. 312, 325 (1981), the motion to dismiss plaintiffs' claims against Glennon in Count III will be granted.

b.  Defendants Al-Hosni and Ali

The defendants state that plaintiffs' § 1983 claims against defendants Al-Hosni and Ali are based on two theories:  First, that Al-Hosni and Ali improperly reported their suspicions that D.T. was neglected or may be neglected if released to his parents; and second, that they conspired with

the St. Louis Metropolitan Police Department to deprive plaintiff Rachel Tracy of her liberty interest as the parent of D.T.

With respect to the first theory, defendants state that Count III alleges they "used their inaccurate understanding of the law to undermine Rachel's parental rights by making exaggerated accusations of behavior that is not unlawful and that was not related to any harm to D.T." Complaint ¶ 129. The complaint explains the "inaccurate understanding of the law" as follows:

> 128. Specifically, the Defendants knew that a victim of domestic violence is not a perpetrator of child abuse under any statute or regulation under Illinois law or Missouri law. Defendants knew that the Illinois Supreme Court had invalidated Allegation 60 as unauthorized by the Illinois Legislature and that the Illinois Department of Family Services had not enacted a regulation to replace Allegation 60. Defendants knew that their accusation did not constitute child abuse under Missouri law.

> 129. Nevertheless Defendants used their inaccurate understanding of the law to undermine Rachel's parental rights by making exaggerated accusations of behavior that is not unlawful and that was not related to any harm to D.T. in derogation of Rachel's constitutional rights.

Complaint ¶¶ 128-29.

The defendants assert that § 1983 does not reach the conduct of private parties acting in their individual capacities, citing Holloway v. Ameristar Casino St. Charles, Inc., 2008 WL 762086, at *3 (E.D. Mo. Mar. 19, 2008), and that private parties cannot be sued under § 1983 for their interpretations of statutes or regulations, citing Blum, 457 U.S. 991. Defendants also assert the fact that a private party's actions are regulated by the state does not change the private party's actions to a "state action," citing San Francisco Arts & Athletics v. U. S. Olympic Committee, 483 U.S. 522, 547 (1987), and Rendell-Baker v. Kohn, 457 U.S. 830, 841 (1982). Defendants argue that to the extent plaintiffs are attempting to pursue a claim against Al-Hosni and Ali under § 1983 because

they reported possible child abuse and/or neglect as required under Missouri and/or Illinois state laws and regulations, the action fails to state a claim upon which relief can be granted.

Plaintiffs respond that the complaint sufficiently alleges a constitutional deprivation and state action on the part of the private actors involved in the case. Plaintiffs assert that state action is present where there is (1) a constitutional deprivation caused by a rule of conduct imposed by the State, and (2) the party charged may fairly be said to be a state actor, citing Lugar v. Edmondson Oil Co, Inc.., 457 U.S. 922, 937 (1982). Plaintiffs assert that the first part of the test is met because Al-Hosni and Ali reported Rachel Tracy to the Missouri Department of Family Services based on their "mistakenly broad construction" of the Missouri and Illinois statutes defining actions constituting child abuse, and the Uniform Child Custody Jurisdiction and Enforcement Act as adopted by Missouri, Response at 8, that these defendants' "unconstitutional construction of a statutory scheme that may otherwise be constitutional" infringed Rachel Tracy's fundamental rights at D.T.'s parent. Id. at 9. Plaintiffs' analysis is difficult to follow, but it appears that plaintiffs argue the first part of the test is met because Al-Hosni and Ali were required to report potential child abuse or neglect as a result of a state statute and, in so doing, they misinterpreted and went beyond statutory requirements.

Plaintiffs argue the second part of the test is met and Al-Hosni and Ali are state actors because the "procedural scheme which is based upon an unconstitutional construction of statute and case law constitutes state action." Response at 10 (citing Adickes v. S. H. Kress & Co., 398 U.S. 144 (1970)). Plaintiffs assert that Al-Hosni and Ali were "implementing standards established by the State" and jointly participated with the "State in this unconstitutional construction of an otherwise constitutional statutory scheme[.]" Id. at 10. Plaintiffs argue that "the State has created a system whereby state officials acted on, participated in and may have required the *ex parte*

application of the Hospital, Dr. Ali and Dr. Al-Hosni in deprivation of Rachel Tracy's and D.T.'s fundamental constitutional rights. Part two of the test is met." Id.

To state a claim under 42 U.S.C. § 1983, a plaintiff must establish two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Neighborhood Enters., Inc. v. City of St. Louis, 540 F.3d 882, 885 (8th Cir. 2008) (quoting West). To meet the second element in this case, plaintiffs must show that defendants Al-Hosni and Ali, private individuals, "acted together with or has obtained significant aid from state officials" or engaged in conduct that is "otherwise chargeable to the State." Lugar, 457 U.S. at 937.

The rights alleged to have been deprived here are Rachel Tracy and D.T.'s constitutionally protected liberty interests in the care and companionship of each other. Myers v. Morris, 810 F.2d 1437, 1462 (8th Cir. 1987) (citing Lehr v. Robertson, 463 U.S. 248, 258 (1983)), overruled on other grounds by Burns v. Reed, 500 U.S. 478 (1991). The right is not absolute, however, as the "liberty interest in familial relations is limited by the compelling governmental interest in protection of minor children, particularly in circumstances where the protection is considered necessary as against the parents themselves." Myers, 810 F.2d at 1462.

To succeed on their § 1983 claim, plaintiffs must prove that Al-Hosni and Ali deprived them of their constitutional rights under color of state law. Adickes, 398 U.S. at 150. This requirement of § 1983 "excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (citations omitted). "[S]tate action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State

itself.'" <u>Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n</u>, 531 U.S. 288, 295 (2001) (citations omitted).

The "color of state law" requirement restricts the imposition of § 1983 liability to persons who "carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." <u>National Collegiate Athletic Ass'n. v. Tarkanian</u>, 488 U.S. 179, 191 (1988) (quoted case omitted). "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." <u>Id.</u> (quoted case omitted). In determining whether a person acted under color of state law, "[f]actors to be considered include: the extent to which the actor relies on governmental assistance and benefits; whether the actor is performing a traditional government function; and whether the incident is aggravated in a unique way by the incidents of governmental authority." <u>Smith</u>, 499 F.3d at 880 (citing <u>Edmonson v. Leesville Concrete Co.</u>, 500 U.S. 614, 621-22 (1991)).

Private individuals who are not state actors may also be liable under § 1983 if they have conspired with or engaged in joint activity with state actors. <u>Adickes</u>, 398 U.S. at 152. The Supreme Court has explained it is well settled that a private party may be held liable on a § 1983 claim if "he is a willful participant in joint action with the State or its agents." <u>Dennis v. Sparks</u>, 449 U.S. 24, 27 (1980). The Eighth Circuit has instructed that to be considered a state actor for purposes of liability under § 1983, a private party must have "reached an understanding" with state officials to deny civil rights and been a "willful participant in joint activity with the State." <u>Steele v. City of Bemidji</u>, 257 F.3d 902, 906 (8th Cir. 2001) (quoting <u>Adickes</u>, 398 U.S. at 152). To survive a motion to dismiss, "a plaintiff seeking to hold a private party liable under § 1983 must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party

14

and the state actor." Mershon v. Beasley, 994 F.2d 449, 451 (8th Cir. 1993) (cited cases omitted). The facts alleged with respect to a conspiracy must be specific and may not be merely conclusory. See White v. Walsh, 649 F.2d 560, 561 (8th Cir. 1981).

The complaint's allegations as to defendants Al-Hosni and Ali are that: (1) Dr. Ali imposed a restriction on D.T.'s discharge for reasons unrelated to his diagnosis and kept D.T. in the hospital longer than his medical condition required; (2) Drs. Al-Hosni and/or Ali made false accusations against Rachel Tracy to child welfare authorities and the police that led to D.T. being placed in foster care; and (3) Drs. Al-Hosni and Ali conspired with the St. Louis Metropolitan Police Department and Missouri Department of Social Services (Children's Division) ("MDSS"). Complaint ¶¶ 60, 84-85, 105, 113, 115, 134.

The Court must determine whether these actions by private individuals Al-Hosni and Ali, which eventually resulted in D.T.'s placement in foster care, were taken under color of state law or amounted to willful participation in a joint activity with state agents. See Adickes, 398 U.S. at 152. The Court concludes the defendants' actions do not meet this standard. Several courts have considered the state action requirement of § 1983 in similar contexts. In the Eighth Circuit, one court held that a hospital was not a state actor where it provided information regarding possible child abuse to state agencies as required by state law. Young v. Arkansas Children's Hosp., 721 F. Supp. 197, 198 (E.D. Ark. 1989). The court stated "the mere furnishing of information by a private party to a law enforcement official, even if the information is false, is not sufficient to constitute joint activity with State officials in prohibited action or to state a claim against a private party under § 1983." Id. Rejecting an argument similar to plaintiffs' in this case, the First Circuit held that a state law requiring health and social workers to file reports of suspected sexual abuse of children "does not create the kind of regulatory nexus that could justify treating [a social worker] as a state

actor."). Brown v. Newberger, 291 F.3d 89, 93 (1st Cir. 2002). Other courts have uniformly held that private hospitals and physicians who reported suspected instances of child abuse or neglect do not become state actors simply because the reporting is carried out pursuant to state law. See Schneider v. Sutter Amador Hosp., 2014 WL 5473545, at *8 (E.D. Cal. Oct. 28, 2014) (doctors' compliance with state reporting requirement did not make them state actors); Storck v. Suffolk County Dep't of Social Servs., 62 F.Supp.2d 927, 941 (E.D.N.Y. 1999) (physician and hospital's compliance with state reporting requirement did not make them state actors); see Haag v. Cuyahoga County, 619 F. Supp. 262, 283 (N.D. Ohio 1985) (licensed psychologist who had mandatory duty under state statute to report child neglect and/or abuse was not a state actor), aff'd, 798 F.2d 1414 (6th Cir. 1986) (Table decision); see also Mueller, 700 F.3d at 1191-92 (hospital "did not become a state actor simply because it complied with state law requiring its personnel to report possible child neglect to Child Protective Services. State law does not amount to an actionable hospital policy."); Thomas v. Beth Israel Hosp. Inc., 710 F. Supp. 935, 940 (S.D.N.Y. 1989) (where hospital complied with state statute by reporting suspected child abuse it did not act under color of state law.). Cf. Ferebee v. Smith, 2005 WL 2709588, at *3 (D.S.D. Oct. 21, 2005) (where defendants made an allegedly false police report that plaintiff had violated an order of protection resulting in plaintiff's false arrest, the defendants' actions were not "willful participation in a joint activity with state agents.").

Missouri law requires that health practitioners and others who have "reasonable cause to suspect that a child has been or may be subjected to abuse or neglect or observes a child being subjected to conditions or circumstances which would reasonably result in abuse or neglect, . . . shall immediately report to the" MDSS. § 210.115.1, Mo. Rev. Stat. Plaintiffs allege that by making a false report to state authorities under this statute, Al-Hosni and Ali acted under color of state law.

Based on the foregoing authorities, the Court disagrees and holds that Al-Hosni and Ali were not state actors in carrying out their mandatory duty created by the Missouri statute to report suspected child abuse or neglect.

Having determined that Al-Hosni and Ali are not state actors, the Court must determine whether plaintiffs have alleged facts sufficient to impose liability on them for conspiring with state actors. Defendants move for dismissal of the conspiracy claims in Count III on the basis that plaintiffs' complaint contains only conclusory allegations and a formulaic recitation of the elements of conspiracy, citing Twombly, 550 U.S. at 570.

To properly plead a claim for civil conspiracy under § 1983, a plaintiff must include factual allegations showing a "meeting of the minds" concerning unconstitutional conduct. Although an express agreement between the purported conspirators need not be alleged, there must be something more than the summary allegation of a conspiracy before such a claim can withstand a motion to dismiss. See Mershon, 994 F.2d at 451. Here, plaintiffs's allegations concerning a conspiracy consist of labels and formulaic legal conclusions:

> 134. Cardinal Glennon Hospital staff members and Dr. Ayoob Ali and/or Dr. Mohamad Al-Hosni conspired with the Metropolitan Police Department and Missouri Department of Social Services (Children's Division). Specifically, state action is involved based upon joint participation, entwinement, nexus and delegation. In addition, there is deprivation of civil rights in furtherance of the conspiracy by each Defendant.

> 135. The Defendants agreed on a joint course of conduct to cause the constitutional deprivation set forth in paragraphs 1 through 95. In particular, 1) the constitutional deprivation caused by a rule of conduct imposed by the State and 2) the party charged may fairly said to be a state actor. The private entities and individuals are implementing standards established by the State.

Complaint ¶¶ 134-35. The complaint does not offer facts to describe what the alleged conspiracy or joint course of conduct entailed. Referenced paragraphs 1 through 95 of the complaint do not allege

any facts that tend to show a meeting of the minds as to unconstitutional conduct. The complaint alleges that Dr. Ali imposed medically unnecessary restrictions on D.T.'s discharge, and that Dr. Al-Hosni and/or Dr. Ali and a police officer provided an affidavit or emergency report that resulted in a MDSS social services worker and a police officer coming to the Hospital to take protective custody of D.T. Plaintiffs also allege that although Dr. Al-Hosni attested to the alleged threat to D.T.'s safety, he was not previously involved in D.T.'s treatment.

Plaintiffs' allegations fall far short of what is required to state a claim for conspiracy under § 1983, as they fail to allege facts sufficient to give rise to the inference that either Al-Hosni or Ali came to a mutual understanding with any state actors to violate plaintiffs' constitutional rights. As a result, neither defendant Al-Hosni nor defendant Ali can be held liable for the constitutional claims at issue in this lawsuit, and their motion to dismiss Count III will be granted.

B. <u>Defendant Dotson's Motion to Dismiss</u>

Defendant Samuel L. Dotson, III moves to dismiss plaintiffs' § 1983 claims in Count III for failure to state a claim upon which relief can be granted. Plaintiffs assert claims against Dotson in his official capacity as Chief of Police of the Metropolitan Police Department of the City of St. Louis ("Police Department"), and seek injunctive relief "enjoining [the Police Department] from further deprivation of Rachel's rights." Complaint ¶ 144(c).

Dotson moves for dismissal on the basis that plaintiffs make only conclusory allegations and fail to allege facts showing that an official policy or custom of the Police Department actually caused an employee to violate plaintiffs' constitutional rights, citing <u>Monell v. Department of Social Services of City of New York</u>, 436 U.S. 658, 692 (1978), and <u>Elder-Keep v. Aksamit</u>, 460 F.3d 979, 986 (8th Cir. 2006) (local government cannot be held liable under § 1983 on a respondeat superior theory). Dotson asserts that plaintiffs' only concrete allegation of wrongdoing as to the Police

Department is that a John Doe officer took a police report based on a complaint by Drs. Ali and Al-Hosni, and that this resulted in D.T. being placed in state custody "without a hearing." Complaint ¶ 81.

Dotson states that plaintiffs also broadly allege the Hospital, Drs. Ali and Al-Hosni, the Police Department and Social Services conspired with each other, and "agreed on a joint course of conduct to cause the constitutional deprivation set forth in paragraphs 1 through 95." Id. ¶¶ 134-35. Dotson states that while plaintiffs make the conclusory allegation that a "custom or policy of the Police Department and the private defendants caused the Constitutional violation alleged herein," id. ¶ 133, the complaint fails to include factual allegations tending to show that the Police Department had a policy or custom that caused the alleged constitutional violation.

Dotson also asserts that plaintiff Rachel Tracy fails to state a plausible claim for injunctive relief because she has not identified an irreparable harm she will suffer absent the issuance of an injunction, citing City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983), and Smith v. Western Electric Co., 643 S.W.2d 10, 13 (Mo. Ct. App. 1982). Dotson states that plaintiff only alleges she "plans to have more children who likely will require care in Missouri" and that she "plans to travel to Missouri by herself and with D.T. and other children she may have in the future." Complaint ¶ 95. Dotson argues that these speculative allegations fail to show plaintiffs will be subject to a real and immediate threat of harm, and therefore do not show the irreparable harm required for injunctive relief.

Plaintiffs respond that the complaint alleges the policy or custom "in great detail," citing to paragraphs 128 through 133 of Count III.[5] Plaintiffs agree that Dotson correctly identifies the

_____

[5]Paragraphs 128 through 133 of the complaint allege:

constitutional infringement allegation as the John Doe police officer taking a police report based on the complaint by Drs. Ali and Al-Hosni, which resulted in D.T. being placed in State custody without a hearing. Pls.' Response at 5. Plaintiffs also state that paragraph 90 of the complaint alleges MDSS sent a social worker and police officer to the hospital to take D.T. into protective

---

128. Specifically, the Defendants knew that a victim of domestic violence is not a perpetrator of child abuse under any statute or regulation under Illinois law or Missouri law. Defendants knew that the Illinois Supreme Court had invalidated Allegation 60 as unauthorized by the Illinois Legislature and that the Illinois Department of Family Services had not enacted a regulation to replace Allegation 60. Defendants knew that their accusation did not constitute child abuse under Missouri law.

129. Nevertheless Defendants used their inaccurate understanding of the law to undermine Rachel's parental rights by making exaggerated accusations of behavior that is not unlawful and that was not related to any harm to D.T. in derogation of Rachel's constitutional rights.

130. In addition, Defendants used Missouri's broad definition of subject matter jurisdiction over child custody issues to exceed federal statutory and constitutional jurisdictional limits. The scheme also violated separation of powers limits found in the Missouri Constitution, Art 2, §1 and principles of federal supremacy.

131. The state procedural scheme formed the basis of a state-enforced custom.

132. The state procedural scheme was exacerbated by a medical standard of care that imposed culpability for child abuse or neglect on a victim of domestic violence when no law imposes such a standard. This exceeds constitutional boundaries because it deprives the domestic violence victim of fundamental right without notice that would be provided by a lawfully imposed statute or regulation that would allow her to govern her conduct without loss of liberty.

133. The custom or policy of the Police Department and the private defendants caused the Constitutional violation alleged herein.

Complaint at 21-22.

custody and that MDSS "employed a policy that allowed *ex parte* removal from the home if the police department and a health care provider were jointly involved." Response at 6.

Plaintiffs state their factual allegations are that D.T. was restrained in the hospital, reported to "child protected authorities" for actions that do not constitute child abuse, and placed in foster care for two weeks without any explanation to the parents. Pls.' Response at 5-6 (Doc. 74). Plaintiffs assert that their policy or custom allegations are that the foregoing actions were "done as a result of a flaw in the construction of the constitutional and statutory provisions that has resulted in a custom or policy being implemented by the medical defendants, the police and the State." Response at 6.

Plaintiffs appear to misunderstand Dotson's irreparable harm argument, and devote much of their response to the argument that they have standing to seek relief. Dotson's motion to dismiss does not challenge plaintiffs' standing. To the extent their Response is relevant to Dotson's argument, plaintiffs state only that Rachel "desires to have more children and, even though she could choose to seek medical care in Evansville, Indiana, her emergency health care provider will likely be the one to decide. Also, Rachel Tracy will have to avoid travel to Missouri in order to avoid the unconstitutional risk to her children." Response at 9.

Plaintiffs have sued Dotson in his official capacity as Chief of Police of the St. Louis Metropolitan Police Department. A claim made against a public official in his or her official capacity is merely another way of pleading an action directly against the public entity itself. Hafer v. Melo, 502 U.S. 21, 25 (1991). As a result, suits against public officials in their official capacity must be treated as suits against the public entity. Kentucky v. Graham, 473 U.S. 159, 166 (1985). The Court therefore treats the complaint as asserting claims against the City of St. Louis (the "City"), as the Police Department lacks a legal identity apart from the city in which it operates, see

Franklin v. City of St. Louis, 2016 WL 2986373, at *4 (E.D. Mo. May 24, 2016), and police

departments are not suable entities under § 1983. Graham v. St. Louis Metro. Police Dep't, 2016

WL 11090625, at *3 (E.D. Mo. Mar. 21, 2016) (citing Ketchum v. City of West Memphis, Ark., 974

F.2d 81, 82 (8th Cir. 1992)).

It is well established that § 1983 will not support a claim based on a respondeat superior

theory of liability. Polk County v. Dodson, 454 U.S. 312, 325 (1981); Monell, 436 U.S. at 694.

Liability under § 1983 requires a causal link to and direct responsibility for the alleged deprivation

of rights. Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990). The City therefore cannot be

held liable under section 1983 for an injury inflicted solely by its employees or agents on a theory

of respondeat superior. See Andrews v. Fowler, 98 F.3d 1069, 1074 (8th Cir. 1996) (citing Monell,

436 U.S. at 694). Rather, a plaintiff seeking to impose liability on a municipality is required to

identify either an official policy or a widespread custom or practice that was the moving force

behind the plaintiff's constitutional injury. See Board of County Comm'rs of Bryan County, Okla.

v. Brown, 520 U.S. 397, 403 (1997); Crawford v. Van Buren County, Ark., 678 F.3d 666, 669 (8th

Cir. 2012) (quoted case omitted).

An official policy represents the decisions of a municipality's legislative body, or of an

official who maintains the final authority to establish governmental policy. Brown, 520 U.S. at 403;

Ware v. Jackson County, Mo., 150 F.3d 873, 880 (8th Cir. 1998). "Although rare, a public official's

single incident of unconstitutional activity can establish the requisite policy if the decision is 'taken

by the highest officials responsible for setting policy in that area of the government's business.'"

Rynders v. Williams, 650 F.3d 1188, 1195 (8th Cir. 2011) (quoting City of St. Louis v. Praprotnik,

485 U.S. 112, 123 (1988)). "Alternatively, liability may be established through proof that the

alleged misconduct was so pervasive among the non-policy making employees of the municipality

as to constitute a 'custom or usage' with the force of law." Crawford, 678 F.3d at 669 (quoted case omitted). "Liability for an unconstitutional custom or usage, however, cannot arise from a single act." Id. (quoted case omitted). "Rather, 'a custom can be shown only by adducing evidence of a continuing, widespread, persistent pattern of unconstitutional conduct.'" Id. (quoted case omitted).

The Supreme Court has rejected any heightened pleading requirement for claims against a governmental entity. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 165-66 (1993). To survive a motion to dismiss, however, a complaint must allege facts sufficient "to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Considering this pleading standard, in order to state a viable § 1983 claim against the City, plaintiffs were required to plead facts sufficient to show at least an inference that their constitutional rights were violated as a result of action taken pursuant to an official policy, or as a result of misconduct so pervasive among non-policymakers as to constitute a widespread custom or practice with the force of law. See Kuha v. City of Minnetonka, 365 F.3d 590, 603-04 (8th Cir. 2003), overruled on other grounds by Szabla v. City of Brooklyn Park, Minn., 486 F.3d 385 (8th Cir. 2007) (en banc).

Here, plaintiffs' complaint alleges that an unidentified City police officer took a police report based on the complaint by Drs. Ali and Al-Hosni, which eventually resulted in D.T. being placed in State custody without a hearing; and that MDSS sent a social worker and an unidentified City police officer to the hospital to take D.T. into protective custody. The facts alleged do not involve action by the City's highest policymaking officials, and plaintiffs do not allege a deliberate choice to follow a course of action made by an official who maintains the final authority to establish governmental policy. Thus, although the complaint alleges the existence of a official policy, this is a mere conclusion and the Court finds plaintiffs do not allege facts that permit it to infer the existence of an official municipal policy.

23

Assuming for purposes of the instant motion that plaintiffs suffered a constitutional deprivation, they have pleaded no facts in the complaint that permit the Court to infer the existence of a widespread municipal custom or practice that caused the deprivation.  Plaintiffs' allegations concerning custom or practice are mere labels and conclusions which are inadequate to state a claim. See Twombly, 550 U.S. at 555.  Although plaintiffs need not identify the specific unconstitutional policy to survive a motion for judgment on the pleadings, see Crumpley-Patterson, 388 F.3d at 591, they must at least allege facts that would support the drawing of an inference that the conduct complained of resulted from the existence of an unconstitutional municipal custom or practice.  Id. Plaintiffs' complaint does not meet this standard as it does not allege any facts to support the inference of a continuing, widespread, persistent pattern of unconstitutional misconduct that was the moving force behind the alleged constitutional violation.  See Monell, 436 U.S. at 694.  "Generally, an isolated incident of alleged police misconduct, such as [plaintiffs] allege[] occurred here, cannot, as a matter of law, establish a municipal policy or custom creating liability under § 1983."  Ulrich v. Pope County, 715 F.3d 1054, 1061 (8th Cir. 2013).  Plaintiffs' conclusory allegation in paragraph 90 that MDSS had a policy or custom of taking children into custody on the joint report of healthcare providers and the police does not allege an official policy or custom and practice of the City.

Plaintiffs' allegations that the Police Department conspired with the other defendants to violate plaintiffs' constitutional rights fail to state a claim for the same reasons as discussed above with respect to the Hospital defendants.  To plead a claim for civil conspiracy under § 1983, plaintiffs must make factual allegations showing a "meeting of the minds" concerning unconstitutional conduct.  While an express agreement between the purported conspirators need not be alleged, there must be something more than the summary allegation of a conspiracy before such

a claim can withstand a motion to dismiss. See Mershon, 994 F.2d at 451. The complaint's allegations concerning a conspiracy are summary and conclusory, and fail to allege facts sufficient to give rise to the inference that any employee of the Police Department came to a mutual understanding with the other defendants to violate plaintiffs' constitutional rights. Plaintiffs' allegations fall far short of what is required to state a claim for conspiracy under § 1983.

In the absence of any factual allegations to support the existence of an unconstitutional municipal policy or custom, or to support the existence of a civil conspiracy to violate plaintiffs' constitutional rights, there is no basis upon which to hold the City liable.

In addition, Dotson correctly observes that plaintiffs fail to allege sufficient irreparable harm to warrant the imposition of prospective injunctive relief. "A district court's decision to issue a preliminary injunction 'depends upon a "flexible" consideration of (1) the threat of irreparable harm to the moving party; (2) balancing this harm with any injury an injunction would inflict on other interested parties; (3) the probability that the moving party would succeed on the merits; and (4) the effect on the public interest.'" Richland/Wilkin Joint Powers Auth. v. United States Army Corps of Engineers, __ F.3d __ , 2016 WL 3383978, at *3 (8th Cir. June 20, 2016) (quoted cases omitted).[6] The party seeking preliminary injunctive relief bears the burden to show a threat of irreparable harm. Roudachevski v. All-American Care Centers, Inc., 648 F.3d 701, 705 (8th Cir. 2011) (cited case omitted). In the absence of irreparable injury, a party is not entitled to injunctive relief. See Chlorine Institute, Inc. v. Soo Line R. R., 792 F.3d 903, 914-15 (8th Cir. 2015).

---

[6]The standard for determining whether a permanent injunction should issue is essentially the same as the standard for a preliminary injunction, except that to obtain a permanent injunction the moving party must attain success on the merits. Bank One, Utah, N.A. v. Guttau, 190 F.3d 844, 887 (8th Cir. 1999) .

Plaintiffs allege that Rachel Tracy, an Illinois resident, plans to have more children who will likely require care in Missouri if they need emergency or complex care, that Rachel plans to travel to Missouri with D.T. and other children she may have in the future, and that they will be at risk of constitutional deprivation when they travel to Missouri. Complaint ¶¶ 102-03. These allegations are simply too speculative to establish the irreparable harm required for injunctive relief. See, e.g., Novus Franchising, Inc. v. Dawson, 725 F.3d 885, 895 (8th Cir. 2013) ("In order to demonstrate irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." (internal quotation marks omitted)); S.J.W. ex rel Wilson v. Lee's Summit R-7 Sch. Dist., 696 F.3d 771, 779 (8th Cir. 2012) ("Speculative harm does not support a preliminary injunction."). "Merely demonstrating the 'possibility of harm' is not enough." Chlorine Institute, 792 F.3d 915-16 (cited case omitted).

As a result, defendant Dotson's motion to dismiss should be granted.

C. <u>Defendant Kinkade's Motion to Dismiss</u>

Defendant Kinkade moves to dismiss plaintiffs' claims in Count III for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed. R. Civ. P., and for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), Fed. R. Civ. P. Kinkade asserts that he is entitled to Eleventh Amendment Immunity, as he is sued in his official capacity and the State of Missouri is therefore the real party in interest, citing Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 101-02 (1984). Kinkade acknowledges the exception to Eleventh Amendment immunity where a plaintiff is seeking prospective injunctive relief, Edelman v. Jordan, 415 U.S. 651 (1974), but asserts that the exception prohibits prospective injunctive relief against the enforcement of state law as plaintiffs seek here, citing Pennhurst, 465 U.S. at 106.

Kinkade argues that plaintiffs cannot obtain prospective injunctive relief to compel compliance with any federal statute, because such relief requires a continuing violation of federal law, citing Green v. Mansour, 474 U.S. 64, 71 (1985), and plaintiffs have not alleged a continuing violation here. Kinkade states that the complaint alleges Rachel Tracy "plans to have more children who likely will require care in Missouri," that she "also plans to travel to Missouri by herself and with D.T. and other children she may have in the future," and that she and D.T. "will suffer irreparable harm as they will be at risk of constitutional deprivation when they travel to Missouri or if D.T. requires emergency or complex medical care." Complaint ¶¶ 102-03. Kinkade also argues that plaintiffs' claim for prospective injunctive relief is moot as the complaint indicates the social services case was transferred back to Illinois and Rachel has regained custody of D.T., so her claims of possible future harm are speculative at best and should be denied as moot.

Plaintiffs respond that Kinkade is not entitled to Eleventh Amendment immunity because they are seeking prospective injunctive relief as permitted by Ex Parte Young, 209 U.S. 123, 155-56 (1908), which they contend "provides a specific exception to Eleventh Amendment prohibitions allowing prospective injunction of State enforcement of state law that violates the federal constitution, as alleged here." Pls.' Response at 4 (Doc. 72). Plaintiffs also assert that Missouri's acceptance of federal funding for placement of children in foster care under the Child Abuse Prevention and Treatment and Adoption Reform Act constitutes another exception to Eleventh Amendment immunity, citing South Dakota v. Dole, 483 U.S. 203 (1987).[7]

---

[7]There are no allegations in the complaint that Missouri accepts federal funds under the Child Abuse Prevention and Treatment and Adoption Reform Act, and plaintiffs' assertion in their Response that Missouri accepts such funds is not supported by any citation to statutory or other authority. In addition, Plaintiffs' Response provides an incorrect citation for this Act; the correct citation is 42 U.S.C. §§ 5111-5115.

With respect to injunctive relief, plaintiffs respond that they sufficiently allege a continuing violation as they "characterize the events in terms of a past occurrence that may present a problem in the future." Id. at 7. Plaintiffs contend that "because children from southern Illinois are regularly transported to St. Louis for medical care, this solitary family can allege that injunction of the unconstitutional conduct provides a remedy to it." Id. at 5. Plaintiff request leave to seek class certification in an amended pleading if the complaint is dismissed for insufficient allegations of a continuing violation are insufficient. Id.

Plaintiffs assert that they present an actual justiciable case or controversy, as required for standing, although Kinkade does not move to dismiss their complaint for lack of standing. Plaintiffs argue their claim for relief is not moot merely because D.T. was returned to his mother in Illinois and that they have standing because their complaint:

> alleges that participants were following a State-imposed construction of state law that violates the federal constitution, that the scheme is ongoing and that, as a result, Plaintiffs are at risk of future deprivation if the scheme is not enjoined. These allegations take the form of allegations involving risk to one family, who live in an area of the country where complex medical problems are addressed by transfer to Missouri.

Pls.' Response at 12.

Finally, plaintiffs argue their case is not moot under the public policy exception to the mootness doctrine, as the challenged conduct is "capable of repetition, yet evading review," quoting Weinstein v. Bradford, 423 U.S. 147, 149 (1975). In support, plaintiffs offer only the conclusory assertion that the "facts alleged in the Complaint fall within this exception to the mootness doctrine." Pls.' Response at 14.

Plaintiffs assert claims against defendant Kinkade in his official capacity as director of MDSS. A suit against a state employee in his official capacity is the functional equivalent of a suit

against the state. See Monell, 436 U.S. at 690 n.55; Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010). It is well established that states and state officials acting in their official capacities are not "persons" within the meaning of 42 U.S.C. § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). The Eleventh Amendment bars § 1983 claims against states, their agencies and state officials in their official capacities when the state itself is "the real, substantial party in interest." Ford Motor Co. v. Department of Treasury of State of Ind., 323 U.S. 459, 464 (1945), overruled on other grounds by Lapides v. Board of Regents of Univ. Sys. of Ga., 535 U.S. 613 (2002); see Murphy v. State of Ark., 127 F.3d 750, 754 (8th Cir. 1997).

State officials acting in their official capacities are "persons" under § 1983, however, when sued for prospective injunctive relief, and the Eleventh Amendment does not bar such relief. Andrus ex rel. Andrus v. State of Ark., 197 F.3d 953, 955 (8th Cir. 1999) (citing Ex Parte Young, 209 U.S. 123). The Supreme Court and Eighth Circuit have made it clear that "[w]hile claims against state officers which seek only prospective relief are not barred, see Edelman v. Jordan, 415 U.S. 651 (1974), this exception is available only when a plaintiff seeks to vindicate a *federal* right." Grand River Enters. Six Nations, Ltd. v. Beebe, 467 F.3d 698, 701 (8th Cir. 2006). "Absent waiver by the state, a federal court has no power to order a state officer exercising delegated authority to comply with duties imposed by state law." Id. at 701-02 (citing Pennhurst, 465 U.S. at 106).

"A state may waive its sovereign immunity, generally in one of two ways: either by voluntarily invoking the jurisdiction of the federal courts or by making a 'clear declaration' that it intends to submit itself to federal jurisdiction." Id. at 702 (citing College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 675-76 (1999) (citations omitted)). Neither situation is present in this case. Plaintiffs' argument that the State of Missouri waived its

Eleventh Amendment rights by accepting federal funds for placement of children in foster care pursuant to a federal statute is entirely unsupported by legal authority, and therefore fails.[8]

Because the State of Missouri has not waived its sovereign immunity in this matter, the Court has no power to order prospective injunctive relief directing Kinkade to comply with duties imposed by state law. See Pennhurst, 465 U.S. at 106. Plaintiffs' argument that Ex Parte Young authorizes such relief is wrong and evidences a misunderstanding of relevant case law. The Supreme Court stated in Pennhurst, "[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment. *We conclude that Young and Edelman are inapplicable in a suit against state officials on the basis of state law*." Id. at 106 (emphasis added). See also Papasan v. Allain, 478 U.S. 265, 277 (1986) (Young "does not foreclose an Eleventh Amendment challenge where the official action is asserted to be illegal as a matter of state law alone. See Pennhurst, 456 U.S. at 104-06. In such a case, federal supremacy is not implicated because the state official is acting contrary to state law only.") Thus, to the extent plaintiffs' complaint seeks prospective injunctive relief requiring Kinkade to comply with Missouri law, it must be dismissed for lack of subject matter jurisdiction as such relief is barred by the Eleventh Amendment.[9]

_____

[8]In South Dakota v. Dole, 483 U.S. 205 (1987), the sole case cited by plaintiffs in support of their waiver argument, the Supreme Court addressed the constitutional limits of Congress' spending power and, in particular, its ability to attach conditions on the states' receipt of federal funds. Dole did not mention the Eleventh Amendment or the issue of a state's waiver of the Eleventh Amendment. Plaintiffs' citation to Dole is completely inapposite.

[9]Dismissal on 11th Amendment grounds is not a judgment on the merits, but rather a dismissal for lack of jurisdiction. Cook v. Gibbons, 124 F. App'x 475, 476-77 (8th Cir. 2005) (unpublished per curiam) (citing Republic of Paraguay v. Allen, 134 F.3d 622, 626 (4th Cir. 1998); Nix v. Norman, 879 F.2d 429, 431 (8th Cir. 1989) (Eleventh Amendment presents jurisdictional

The complaint also seeks prospective injunctive relief requiring Kinkade to comply with the "Interstate Child Custody Jurisdiction and Enforcement Act," which Kinkade appears to believe is a federal statute. Plaintiffs' response to the motion to dismiss acknowledges that they seek an injunction to require Kinkade to comply with state law, Pls.' Response at 4 (Doc. 72), but does not specifically state that they are not seeking to require Kinkade to comply with a federal statute. The Court concludes the complaint's reference to the "Interstate Child Custody Jurisdiction and Enforcement Act" is a drafting error, and that plaintiffs intended to refer to the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), codified in Missouri at §§ 452.700-452.930 of the Missouri Revised Statutes. See Al-Hawarey v. Al-Hawarey, 388 S.W.3d 237, 242 (Mo. Ct. App. 2012). This conclusion is supported by (1) the non-existence of any federal statute titled "Interstate Child Custody Jurisdiction and Enforcement Act," and (2) plaintiffs' statement in their opposition to the Hospital defendants' motion to dismiss that the defendants' actions violate three statutes: "The Missouri statute defining actions constituting child abuse, the Illinois statute defining actions constituting child abuse and the Uniform Child Custody Jurisdiction and Enforcement Act provision adopted by Missouri[.]" Pls.' Response at 5 (Doc. 68); see also id. at 6-8 (discussing Missouri case law interpreting the UCCJEA). Because the complaint seeks prospective injunctive relief requiring Kinkade to comply with the UCCJEA, the requested relief is barred by the Eleventh Amendment, as the UCCJEA is state law. As a result, the Court does not reach defendant Kinkade's argument that plaintiffs cannot establish a continuing violation of federal law as required for prospective injunctive relief.

_____

limit on federal courts in civil rights cases against states and their employees))

Defendant Kinkade's motion to dismiss should therefore be granted based on lack of subject matter jurisdiction.

### D. Plaintiffs' Request to Amend Complaint

As stated above, plaintiffs' Response includes an alternative request to amend their complaint for a fourth time, to assert claims on behalf of a class if the Court finds they do not assert a continuing violation. Although leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), "plaintiffs do not have an absolute or automatic right to amend." United States ex rel. Lee v. Fairview Health Sys., 413 F.3d 748, 749 (8th Cir. 2005). Where, as here, a party seeks leave to amend its complaint after the deadline for amending pleadings established by the Case Management Order has passed, Fed. R. Civ. P. 16(b)'s good-cause standard applies, not the standard of Rule 15(a). Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 716 (8th Cir. 2008); Popoalii v. Correctional Med. Servs., 512 F.3d 488, 497 (8th Cir. 2008). Plaintiffs have not addressed the issue of good cause, or the requirements of Rule 23, Fed. R. Civ. P.

More critically, plaintiffs have not filed a motion for leave to amend their complaint or submitted a proposed amended complaint. "[I]n order to preserve the right to amend the complaint, a party must submit the proposed amendment along with its motion." Clayton v. White Hall Sch. Dist., 778 F.2d 457, 460 (8th Cir. 1985). The Eighth Circuit has repeatedly held that district courts do not abuse their discretion in denying leave to amend where the plaintiff did not file a motion for leave to amend and submit a proposed amended complaint, and merely asked for leave to amend in its response to a motion to dismiss. See, e.g., Geier v. Missouri Ethics Comm'n, 715 F.3d 674, 678 n.4 (8th Cir. 2013); Minneapolis Firefighters' Relief Ass'n v. MEMC Electronic Materials, Inc., 641 F.3d 1023, 1030 (8th Cir. 2011); In re 2007 Novastar Financial, Inc., Secs. Litig., 579 F.3d 878, 884-85 (8th Cir. 2009); Clayton, 778 F.2d at 460.

The Court finds that plaintiffs have not followed the necessary procedural steps and declines their request for leave to file a fourth amended complaint to assert class claims.

E.  Diversity Jurisdiction Does Not Exist, and Court Declines to Exercise Supplemental Jurisdiction Over the Remaining State Law Claim

"Courts have an independent obligation to determine whether subject-matter jurisdiction exists[.]" Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010).  The complaint's jurisdictional allegations assert that both federal question jurisdiction and diversity jurisdiction exist.  Complaint ¶¶ 6, 7.  The Court has now dismissed the federal claims under § 1983 in Count III and the state law medical malpractice claim in Count II, leaving only Count I, a state law claim for false imprisonment. Although plaintiffs have filed multiple amended complaints, the Third Amended Complaint fails to allege jurisdictional facts sufficient to establish diversity jurisdiction.

The diversity statute, 28 U.S.C. § 1332(a)(1), requires complete diversity of citizenship between plaintiffs and defendants.  Buckley v. Control Data Corp., 923 F.2d 96, 97, n.6 (8th Cir. 1991).  "Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship." OnePoint Solutions, LLC v. Borchert, 486 F.3d 342, 346 (8th Cir. 2007).  As the parties asserting federal jurisdiction, plaintiffs bear the burden to establish complete diversity of citizenship.  See Branson Label, Inc. v. City of Branson, Mo., 793 F.3d 910, 917 (8th Cir. 2015).  Plaintiffs have not met this burden, as their citizenship allegations are markedly deficient.  Plaintiffs do not plead facts to establish the citizenship of defendant SSM Cardinal Glennon Children's Hospital because they do not plead the state in which its principal place of business is located.[10]  Plaintiffs do not plead any facts concerning the citizenship of

[10]For a corporate party, there must be allegations of both its state of incorporation and principal place of business. 28 U.S.C. § 1332(c)(1); see Sanders v. Clemco Industries, 823 F.2d 214, 215 n.1 (8th Cir. 1987).

defendants Amy Meyer, Dr. Ayoob Ali or Dr. Mohamad Al-Hosni. Plaintiffs also do not plead any facts concerning the citizenship of defendants "John Does 1 through 30," including the John Doe police officer alleged to have taken an active role in violating their rights. See Lee v. Airgas-Mid South, Inc., 793 F.3d 894, 899 (8th Cir. 2015) ("[t]he general rule . . . has been that, on challenge, the diverse citizenship of the fictitious defendants must be established by the plaintiff in order to continue a federal court action.") (quoted source omitted). Because complete diversity of citizenship does not appear from the face of the complaint, there is no diversity jurisdiction.

The Court has supplemental jurisdiction over plaintiffs' state law claim pursuant to 28 U.S.C. § 1367(a). It is within the Court's discretionary authority, however, to decline to exercise supplemental jurisdiction over state law claims once it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); see Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009); Simes v. Arkansas Judicial Discipline and Disability Comm'n, 734 F.3d 830, 835 (8th Cir. 2013). The Eighth Circuit has stated that "federal courts should exercise judicial restraint and avoid state law issues wherever possible." Thomas v. Dickel, 213 F.3d 1023, 1026 (8th Cir. 2000) (internal quotation marks and quoted case omitted). As a result, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine–judicial economy, convenience, fairness, and comity–will point toward declining to exercise jurisdiction over the remaining state-law claims." Barstad v. Murray County, 420 F.3d 880, 888 (8th Cir. 2005) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)).

Here, the federal claims in Count III over which the Court had original jurisdiction have been dismissed, and the only remaining claim is under state law. The Court in the exercise of its

discretion will decline to exercise supplemental jurisdiction over this claim and will dismiss it without prejudice to refiling in state court.

## IV. Conclusion

For the foregoing reasons, the Court will grant defendants SSM Cardinal Glennon Children's Hospital, Dr. Ayoob Ali, and Dr. Mohamad Al-Hosni's motion to dismiss plaintiffs' medical malpractice claim in Count II without prejudice for failure to file the affidavit required by § 538.225, Mo. Rev. Stat., and grant their motion to dismiss the § 1983 claims in Count III for failure to state a claim upon which relief can be granted. The Court will grant defendant Dotson's motion to dismiss plaintiffs' § 1983 claims in Count III for failure to state a claim upon which relief can be granted. The Court will grant defendant Kinkade's motion to dismiss plaintiffs' § 1983 claims in Count III without prejudice for lack of subject matter jurisdiction. Because the Doe defendants in this action have never been served, the claims against them will be dismissed without prejudice. See Ballinger v. Cedar County, Mo., 810 F.3d 557, 559 n.1 (8th Cir. 2016).

The Court concludes that diversity jurisdiction does not exist on the face of the Third Amended Complaint. In the exercise of its discretion the Court declines to exercise supplemental jurisdiction over plaintiffs' remaining state law claim in Count I and will dismiss it without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that defendants SSM Cardinal Glennon Children's Hospital, Dr. Ayoob Ali and Dr. Mohamad Al-Hosni's motion to dismiss Count II for failure to obtain the affidavit required by § 538.225, Missouri Revised Statutes, and to dismiss Count III of Plaintiffs' Third Amended Complaint for failure to state a claim, is **GRANTED**. [Doc. 64]

**IT IS FURTHER ORDERED** that defendant Samuel Dotson, III in his official capacity as Chief of Police of the St. Louis Metropolitan Police Department's motion to dismiss Count III of Plaintiffs' Third Amended Complaint for failure to state a claim is **GRANTED**.  [Doc. 71]

**IT IS FURTHER ORDERED** that defendant Brian Kinkade in his official capacity as Director of the Missouri Division of Social Services, Children's Division's motion to dismiss Count III of Plaintiffs' Third Amended Complaint for lack of subject matter jurisdiction is **GRANTED**. [Doc. 62]  Defendant Kinkade's motion to dismiss Count III for failure to state a claim is **DENIED as moot**. [Doc. 62]

**IT IS FURTHER ORDERED** that the Court declines to exercise supplemental jurisdiction over plaintiffs' remaining state law claim for false imprisonment in Count and will dismiss that claim without prejudice.

**IT IS FURTHER ORDERED** that plaintiffs' claims against defendants John Does 1 through 30 are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that all other pending motions are **DENIED as moot**.  [Docs. 101, 106, 108, 114, 117]

An Order of Dismissal will accompany this Memorandum and Order.


_Charles A. Shaw_
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**


Dated this  12th  day of July, 2016.